1  **TOSTRUD LAW GROUP, P.C.**
2  JON A. TOSTRUD
   1925 Century Park East
3  Suite 2100
   Los Angeles, CA 90067
4  Telephone: (310) 278-2600
   Facsimile: (310) 278-2640
5  Email: jtostrud@tostrudlaw.com

6  [*Additional Counsel on Signature Page*]

7              **UNITED STATES DISTRICT COURT**
8              **CENTRAL DISTRICT OF CALIFORNIA**

9  JOEY HILL, Derivatively on Behalf          CASE NO.: 19-4272
10 of Nominal Defendant
   STAMPS.COM, INC.,                          **VERIFIED SHAREHOLDER**
11                                            **DERIVATIVE COMPLAINT**
12            Plaintiff,

13            v.

14
15 MOHAN P. ANANDA, DAVID C.
   HABIGER, G. BRADFORD JONES,
16 KENNETH T. MCBRIDE, and
   THEODORE R. SAMUELS, II,
17
18            Defendants
                                              **JURY TRIAL DEMANDED**
19 STAMPS.COM,  INC.,  a  Delaware
20 Corporation,
21
              Nominal Defendant.
22

23        Plaintiff  Joey  Hill  ("Plaintiff"),  on  behalf  of  Stamps.com,  Inc.

24 ("Stamps.com" or the "Company"), derivatively, alleges the following based upon

25 personal knowledge as to himself and his own acts, and upon information and belief

26
27 and investigation of counsel as to all other matters.  That investigation included,

28

among other things, a thorough review and analysis of public documents, court filings, press releases and news articles concerning Stamps.com, and the other facts as set forth herein:

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought on behalf of and for the benefit of Stamps.com, against certain of its officers and/or directors named as defendants herein seeking to remedy their breaches of fiduciary duties, unjust enrichment, abuse of control, waste of corporate assets, and violations of the Securities Exchange Act of 1934, Sections 10(b)-5 and 20(a) during the period of May 3, 2017 to the present (the "Relevant Period").  Defendants' actions have caused, and will continue to cause, substantial financial harm and reputational damage to Stamps.com.

## JURISDICTION AND VENUE

2.      Pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court has jurisdiction over the claims asserted herein for violations of sections 10(b) and 20(a) of the Exchange Act.  This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

3.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient

minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because: (a) the Company maintains its principal place of business in this District; (b) one or more of the defendants either resides in or maintains executive offices in this District; (c) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to the Company, occurred in this District; and (d) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## **PARTIES**

**Plaintiff**

5.      ***Plaintiff Joey Hill*** is a current Stamps.com shareholder during the relevant period.  Plaintiff will continue to hold Stamps.com shares throughout the pendency of this action.  Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

**Nominal Defendant**

6.    ***Nominal Defendant Stamps.com*** is incorporated in Delaware with principal executive offices located at 1990 E. Grand Avenue, El Segundo, California 90245.   Stamps.com shares trade on the NASDAQ under the ticker symbol "STMP."  Stamps.com is a provider of Internet-based mailing and shipping solutions in the United States. Under the Stamps.com and Endicia brands, Stamps.com customers use USPS solutions to mail and ship a variety of mail pieces and packages through the USPS and customers using Stamps.com solutions receive discounted postage rates compared to USPS.com and USPS retail locations on certain mail pieces.

**Director Defendants**

7.    ***Defendant Mohan P. Ananda*** ("Ananda") has served as a director of the Company since 1998.    Defendant Ananda is a member of the Audit, Compensation and Nominating committees.

8.    ***Defendant David C. Habiger*** ("Habiger") has served as a director of the Company since 2016.   Defendant Habiger is a member of the Compensation Committee.

9.    ***Defendant G. Bradford Jones*** ("Jones") has served as a director of the Company since 1998.   Defendant Jones is the Chair of the Audit Committee, and a member of the Nominating Committee.

10.    ***Defendant Kenneth T. McBride*** ("McBride") has served as the Company's Chief Executive Officer and a member of the Board of Directors

("Board") since August 2001. Beginning in 1999, McBride has held various positions at the Company: as President from 2001 until January 2012; as Chief Financial Officer from August 2000 to January 2004; and as senior director and vice president of finance from 1999 to 2000. McBride has also been chairman of the Company's Board since January 2012.

11.    **_Defendant Theodore R. Samuels, II_** ("Samuels") has served as a director of the Company since 1998.  Defendant Samuels is a member of the Audit Committee.

12.    Defendants Ananda, Habiger, Jones, McBride, and Samuels are collectively referred to herein as "Defendants".

13.    Defendant McBride is referred to herein as the "Officer Defendant".

**Non-Party Director**

14.    **_Non-party Katie May_** ("May") was appointed to the Board on March 29, 2019.

**Audit Committee Charter**

15.    Pursuant to the Company's Audit Committee Charter, the primary function of the Audit Committee is to assist the Board in fulfilling its oversight responsibilities by reviewing the financial information which will be provided to the stockholders and others, the systems of internal controls which management and the Board have established, and the Corporation's audit and financial reporting process. The Audit Committee shall be directly responsible for the appointment,

compensation, retention and oversight of the work of any registered public accounting firm engaged (including resolution of disagreements between management and the auditor regarding financial reporting) for the purpose of preparing or issuing an audit report or performing other audit, review or attest services for the Corporation, and each such registered public accounting firm shall report directly to the Audit Committee.

16.     The Audit Committee is given the following responsibilities and duties:

> Review [the Company's] Charter at least annually and recommend any changes to the Board of Directors.
>
> Review [the Company's] annual financial statements and any other relevant reports or other financial information.
>
> Review the regular internal financial reports prepared by management.
>
> Select the independent accountants and approve the fees and other compensation to be paid to the independent accountants.
>
> Pre-approve all audit and permitted non-audit services to be performed by the independent accountants.
>
> Review and ensure the independence of the independent accountants. This review shall cover and include services, fees, quality control procedures and a formal written statement from the independent auditors regarding relationships between the independent auditors and the Corporation, consistent with Independence Standard Board Standard No. 1.
>
> Review the performance of the independent accountants and discharge the independent accountants if and when circumstances warrant.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Following completion of the annual audit, review separately with the independent accountants and management any problems or difficulties encountered during the course of the audit.

Establish procedures for the receipt, retention, and treatment of complaints received by the [Company] regarding accounting, internal accounting controls, or auditing matters.

Establish procedures for the confidential, anonymous submission by employees of the [Company] of concerns regarding questionable accounting or auditing matters.

Perform any other activities consistent with this Charter, the [Company's] Bylaws and governing law, as the Audit Committee or the Board deems necessary or appropriate.

## The Company's Code of Business and Ethical Conduct

17.    The officers, directors and employees of Stamps.com hold an important role in corporate governance. They are uniquely empowered to ensure that shareholders' interests are appropriately balanced, protected and preserved. Accordingly, the Code of Business and Ethical Conduct (the "Code") provides principles to which these officers, directors and employees are expected to adhere and advocate. The Code embodies rules regarding individual and peer responsibilities, as well as responsibilities to Stamps.com, the public and other stakeholder.  The following principles and responsibilities govern the Company's officers and directors professional and ethical conduct:

They must always promote honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest in personal and professional relationships.

They must not use their position for personal gain such as by soliciting or accepting for personal benefit business opportunities that might otherwise accrue to the benefit of Stamps.com.

They must provide the Securities and Exchange Commission, the public and other constituents with reports, documents and information that is full, fair, accurate, complete, objective, relevant, timely and understandable.

They must comply with applicable rules and regulations of federal, state, provincial, local and foreign governments, and other appropriate private and public regulatory agencies.

They must act in good faith, responsibly, with due care, competence and diligence, without misrepresenting material facts or allowing their independent judgment to be subordinated.

They must respect the confidentiality of information acquired in the course of their work, except when authorized or otherwise legally obligated to disclose the information.

They should proactively promote ethical behavior as a responsible partner among peers in their work environment and community.

They must responsibly use and control all assets and resources employed or entrusted to them.

They must not take any action to fraudulently influence, coerce, manipulate, or mislead any auditor engaged in the performance of an audit for the purpose of rendering the financial statements materially misleading.

They must promptly report Code violations and suspected illegal, unethical or otherwise dishonest activities to the General Counsel and CFO. The General Counsel and CFO must promptly investigate all such reports. Persons making such reports shall not be retaliated against for doing so. The General Counsel and CFO shall present the results of their investigation to the CEO.  If the alleged violation was committed by an officer of Stamps.com, they shall also report the results of their investigation to the Audit Committee of the Board of Directors at its next meeting.   The CEO and the Audit Committee shall each be

empowered to take merited punitive or corrective action, which may include termination of employment.

## SUBSTANTIVE ALLEGATIONS

18.     Stamps.com became the first USPS-approved PC Postage vendor offering software-only mailing and shipping solutions in 1999. Under the Stamps.com and Endicia brands, customers use the Company's USPS-approved mailing and shipping solutions to mail and ship a variety of mail pieces and packages through the USPS.  Customers can purchase and print postage twenty-four hours a day, seven days a week, through software or web interfaces.

19.     The Company's solutions allow customers to receive discounts for most USPS mail and packages.

## False and Misleading Statements Issued During the Relevant Period

20.     During the Relevant Period, the Company repeatedly touted its purported strong financial results and relationship with USPS.__For example, on May 3, 2017, the Company issued a press release for its 1Q17 results.  The press release stated in relevant part:

> "We are very pleased with our continued strong revenue and earnings growth this quarter," said Ken McBride, Stamps.com's chairman and CEO.  "In addition to our overall revenue and earnings growth, during the first quarter we reached our highest level of paid customers, we saw continued strong growth in our shipping business areas, and we experienced strong contributions from all of our subsidiaries.   We remain very excited about our future prospects and, combined with our first quarter performance, led us to increase our guidance for 2017."

21.     The press release further stated:

First quarter 2017 total revenue was $105.0 million, up 28% compared to the first quarter of 2016.  First quarter 2017 Mailing and Shipping revenue (which includes service, product and insurance revenue but excludes Customized Postage and Other revenue) was $102.6 million, up 30% versus the first quarter of 2016.  First quarter 2017 Customized Postage revenue was $2.4 million, down 7% versus the first quarter of 2016.

First quarter 2017 GAAP income from operations was $34.6 million and GAAP net income was $33.1 million. GAAP net income per share was $1.82 based on 18.2 million fully diluted shares outstanding. This compares to first quarter 2016 GAAP income from operations of $22.2 million and GAAP net income of $13.2 million or $0.71 per share based on fully diluted shares outstanding of 18.7 million. First quarter 2017 GAAP income from operations, GAAP net income and GAAP income per fully diluted share increased by 56%, 150% and 157% year-over-year, respectively.

First quarter 2017 GAAP income from operations included $11.4 million of non-cash stock-based compensation expense and $4.0 million of non-cash amortization of acquired intangibles.  First quarter 2017 GAAP net income also included $93 thousand of non-cash amortization of debt issuance costs.

Excluding the non-cash stock-based compensation expense and non-cash amortization of acquired intangibles, first quarter 2017 non-GAAP income from operations was $50.0 million.

Also excluding non-cash amortization of debt issuance costs, first quarter 2017 non-GAAP pre-tax income was $49.3 million.  First quarter 2017 non-GAAP income tax expense was $16.0 million, which was $15.3 million higher than the $660 thousand GAAP income tax expense for the quarter.  The higher non-GAAP tax expense reflects the tax impact on the non-GAAP pre-tax income at a non-GAAP effective tax rate of 32.5%, which was materially higher than the actual GAAP effective tax rate for the quarter.  *See* the section later in this press release entitled "About Non-GAAP Financial Measures" for more information on how non-GAAP taxes are calculated. Taking into account the non-GAAP adjustments, first quarter 2017 non-GAAP

adjusted income was \$33.2 million or \$1.83 per share based on 18.2 million fully diluted shares outstanding.

22.    During the Company's 2Q17 earnings call on August 2, 2017, CEO McBride stated:

> the partnership with the Postal Service is continuing to be stronger and stronger and some of the – we have multiple contracts and various partnerships with the Postal Service.  And so in this case, we were able to get a couple of our contracts renewed at improved terms.

23.    The foregoing statements were false and misleading because they failed to disclose that: (i) the Company's financial results depended on the manipulation of a USPS program that cost USPS an estimated \$235 million per year; and (ii) as a result, the Company's business was unsustainable and its financial results were highly misleading.

## THE TRUTH EMERGES

24.    On February 21, 2019, the Company held a conference call to discuss its financial results from the 4th quarter of 2018 and fiscal year 2018 as well as its business outlook and "certain strategic items . . . that impact our business outlook for 2019."

25.    On the call, Defendant McBride discussed the Company's renewal talks with USPS over its revenue share agreement and claimed that Stamps.com:

> will no longer be exclusive to the USPS and that's nonnegotiable. USPS has not agreed to accept these terms or any other terms of our partnership proposal.  So, at this point we decided to discontinue our shipping partnership with the USPS so that we can fully embrace

partnerships with other carriers who we think will be well positioned to win in a shipping business in the next five years.

26.     The Company further announced that, contrary to previous expectations of strong growth, 2019 revenue was expected to decline 5.4%.

27.     These revelations shocked the market.  On this news, the Company's stock plummeted to a close price of $83.65 on February 22, 2019, a decline of over 57% from the previous close price of $198.08.

28.     The revelation was an announcement that the Company was simply walking away from a business relationship that accounted for 87% of the Company's earnings.

29.     On February 26, 2019, it was reported that, contrary to Defendant McBride's representations, USPS itself had decided to terminate its relationship with Stamps.com in the face of Company's increasing demands and abuse of the reseller program.

## DUTIES OF DEFENDANTS

30.     By reason of their positions as officers, directors, and/or fiduciaries of Stamps.com and because of their ability to control the business and corporate affairs of Stamps.com, Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Stamps.com in a fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of Stamps.com and its shareholders so as to

benefit all shareholders equally, and not in furtherance of their personal interest or benefit.

31.     Each director and officer of the Company owes to Stamps.com and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

32.     Defendants, because of their positions of control and authority as directors and/or officers of Stamps.com, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with Stamps.com, each of the Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of Stamps.com.

33.     To discharge their duties, the officers and directors of Stamps.com were required to exercise reasonable and prudent supervision over the

management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Stamps.com were required to, among other things:

a)  ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

b)  conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c)  properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

d)  remain informed as to how Stamps.com conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

e)      ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations;

34.      Each Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Stamps.com, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that Defendants were aware or should have been aware posed a risk of serious injury to the Company.

35.      Each director and officer of the Company owed to Stamps.com the fiduciary duty to exercise due care and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of good faith and fair dealing.  In addition, as officers and/or directors of a publicly held company, Defendants had a duty not to advance their own personal, financial, or economic interests over, and at the expense of, the Company's public shareholders, or to allow other Stamps.com directors, officers, and/or employees to do so.  Each director and officer of the Company also owed

Stamps.com and its shareholder-owners the duty to maintain the Company's confidential information and prevent others from misappropriating and/or trading while in possession of the Company's proprietary, confidential information.

36.     Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent the information as detailed *infra*. Defendants' subjected the Company to the costs of defending and the potential liability from a class action lawsuit for violations of the federal securities laws.   As a result, Stamps.com has expended, and will continue to expend, significant sums of money.

37.     Defendants' actions have irreparably damaged Stamps.com's corporate image and goodwill.

## DEMAND FUTILITY ALLEGATIONS
## FOR THE BOARD OF STAMPS.COM

38.     Plaintiff will adequately and fairly represent the interests of Stamps.com and its shareholders in enforcing and prosecuting its rights.

39.     Plaintiff brings this action derivatively in the right and for the benefit of Stamps.com to redress injuries suffered and to be suffered by Stamps.com because of the breaches of fiduciary duty by Defendants.

40.     Because of the facts set forth herein, Plaintiff has not made a demand on the Board of Stamps.com to institute this action against Defendants.   Such demand would be a futile and useless act because the Board is incapable of making

1  an independent and disinterested decision to institute and vigorously prosecute this

2  action.

3      41.    The Stamps.com Board is currently comprised of Defendants Ananda,

4

5  Habiger, Jones, McBride, and Samuels.  And non-party May.  Thus, Plaintiff is

6  required to show that a majority of Defendants, *i.e.*, *three* (3), cannot exercise

7

8  independent objective judgment about whether to bring this action or whether to

9  vigorously prosecute this action.

10      42.    Defendants face a substantial likelihood of liability in this action

11

12  because they caused Stamps.com to issue false and misleading statements

13  concerning the information described herein.  Because of their advisory, executive,

14  managerial, and directorial positions with Stamps.com, Defendants had knowledge

15

16  of material non-public information regarding the Company and was directly

17  involved in the operations of the Company at the highest levels.

18      43.    Defendants either knew or should have known of the false and

19

20  misleading statements that were issued on the Company's behalf and took no steps

21  in a good faith effort to prevent or remedy that situation, proximately causing

22  millions of dollars of losses for Stamps.com shareholders.

23      44.    Defendants (or at the very least a majority of them) cannot exercise

24

25  independent objective judgment about whether to bring this action or whether to

26  vigorously prosecute this action.  For the reasons that follow, and for reasons

27

28  detailed elsewhere in this Complaint, Plaintiff has not made (and is excused from

making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

45.     Any suit by the Board to remedy these wrongs would likely expose the Company to further violations of the securities laws that would result in civil actions being filed; thus, the Board members are hopelessly conflicted in making any supposedly independent determination about whether to sue themselves.

46.     Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

47.     Defendants authorized and/or permitted the Company to make false statements that disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

## DEFENDANTS ARE NOT INDEPENDENT

**Defendant McBride**

48.     Defendant McBride is the CEO of the Company.  Defendant McBride is also the Chairman of the Board of the Company.

49.     Defendant McBride is not disinterested or independent, and therefore, is incapable of considering demand because McBride (as CEO) is an employee of the Company who derived substantially all of his income from his employment with Stamps.com, making him not independent.  As such, McBride cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

50.     This lack of independence and financial benefits received by Defendant McBride renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.

51.     Defendant McBride is not disinterested or independent, and therefore, is incapable of considering demand because Defendant McBride is a named Defendant in the instant action and in the securities class actions entitled *Alan Grabisch v. Stamps.com, Inc., et al.*, Case 2:19-cv-01497 (C.D. Cal.) and *Matt Karinski v. Stamps.com, Inc., et al.*, Case 2:19-cv-01828 (C.D. Cal.).

**Defendants Ananda, Jones and Samuels**

52.     Defendants Ananda, Jones and Samuels are members of the Audit Committee.

53.     Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, overseeing the accounting and financial reporting processes of the Company and the audits of the financial

statements of the Company.  Specifically, as a member of the Audit Committee, Defendants Ananda, Jones and Samuels were tasked with reviewing the Company's compliance with applicable laws and regulations and reviewing and overseeing any policies, procedures and programs designed to promote such compliance.

54.     Defendants Ananda, Jones and Samuels breached their fiduciary duties of due care, loyalty, and good faith, because as members of the Audit Committee, *inter alia*, they allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious accounting issues and deficiencies described above.   Therefore, Defendants Ananda, Jones and Samuels face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon him is futile.

## IN REPURCHASING STOCK, STAMPS.COM RELIED ON THE OFFICER DEFENDANT'S FALSE OR MISLEADING STATEMENTS

55.     In purchasing common stock in connection with the stock repurchase program, Stamps.com relied on the Officer Defendant's false or misleading statements, either directly or through the "fraud on the market" doctrine articulated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and *Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014), or through the doctrine

articulated in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

56.   Throughout the Relevant Period, Stamps.com justifiably expected the Officer Defendant to disclose material information as required by law and SEC regulations in the Company's periodic filings with the SEC and in statements made to the investing public.  Stamps.com would not have purchased its securities at artificially inflated prices had the Officer Defendant disclosed all material information known to him or that was so obvious it should have been known to him, as detailed herein. Thus, reliance by the Company should be presumed with respect to the Officer Defendant's omissions of material information as established by the *Affiliated Ute* presumption of reliance.

57.   Additionally, the "fraud on the market" presumption applies to the Officer Defendant's misstatements of material facts or failures to disclose material facts.

58.   At all relevant times, the market for stock was efficient market for the following reasons, among others:

(a)   Stamps.com stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b)   As a regulated issuer, Stamps.com filed periodic public reports with the SEC and the NASDAQ;

(c)     Stamsp.com regularly and publicly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)     Stamps.com was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace; and

(e)     The market price of Stamps.com's stock reacted rapidly to new information entering the market.

59.     As a result of the foregoing, the market for Stamps.com stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in the price of Stamps.com's common stock.  The foregoing facts indicate the existence of an efficient market for trading of Stamps.com's stock and support application of the fraud-on-the-market doctrine.

60.     Stamps.com relied on the integrity of the market price for the repurchase of its common stock and is entitled to a presumption of reliance with respect to the Officer Defendant's misstatements and omissions alleged herein.

61.     Had Stamsp.com known of the material adverse information not disclosed by the Officer Defendant or been aware of the truth behind the Officer Defendant's material misstatements, the Company would not have purchased Stamps.com stock at artificially inflated prices.

## **THE COMPANY'S STOCK REPURCHASE PROGRAM**

62.     On April 24, 2017, Defendants approved a stock repurchase program that took effect upon expiration of the prior plan on May 8, 2017 and authorized the Company to repurchase up to $90 million of stock over the six months following its effective date.

63.     On October 24, 2017, the Board approved a stock repurchase program, which became effective November 10, 2017, that replaced the Company's prior stock repurchase plan and authorized the Company to repurchase up to $90 million of stock over the six months following its effective date.

64.     On April 25, 2018, Defendants approved a stock repurchase plan that took effect upon expiration of the prior plan on May 11, 2018 and authorized the Company to repurchase up to $90 million of stock over the six months following its effective date.

65.     On October 24, 2018, the Board approved a new stock repurchase plan, which became effective November 11, 2018, that replaced the Company's prior stock repurchase plan and authorized the Company to repurchase up to $90 million of stock over the six months following its effective date.

## NEITHER THE STATUTORY "SAFE HARBOR" NOR THE "BESPEAKS CAUTION" DOCTRINE APPLIES TO THE OFFICER DEFENDANT'S MISREPRESENTATIONS

66.     Neither the safe-harbor provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") nor the judicially created "bespeaks caution" doctrine applicable to forward looking statements under certain circumstances applies to any of the false or misleading statements pleaded herein. None of the subject statements constituted a forward-looking statement; rather, they were historical statements or statements of purportedly current facts and conditions at the time the statements were made, including statements about (a) the Company's financial results depended on the manipulation of a USPS program that cost USPS an estimated $235 million per year; and (B) as a result, the Company's business was unsustainable and its financial results were highly misleading..

67.     Alternatively, to the extent any of the false or misleading statements pleaded herein could be construed as forward-looking statements, they were not accompanied by any meaningful cautionary language identifying important fact that could cause actual results to differ materially from those in the purportedly forward-looking statements.   Further, to the extent the PSLRA's safe harbor

would otherwise apply to any forward-looking statements pleaded herein, the Officer Defendant is liable for those false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker(s) knew the statement was false or misleading, or the statement was authorized and/or approved by the Officer Defendant who knew that the statement was materially false or misleading when made.  None of the historic or present tense statements made by the Officer Defendant were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Officer Defendant expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## **FIRST CAUSE OF ACTION**

### **Against Defendants For Breach of Fiduciary Duty**

68.     Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

69.     Defendants owed and owe Stamps.com fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed and owe Stamps.com the highest obligation of good faith, fair dealing, loyalty and due care.

70.     Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

71.     Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business prospects of the Company. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

72.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, Stamps.com has sustained significant and actual damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

73.     Plaintiff, on behalf of Stamps.com, has no adequate remedy at law.

### SECOND CAUSE OF ACTION

### Against Defendants for Unjust Enrichment

74.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

75.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Stamps.com in the form of salaries, bonuses, and other forms of compensation.

76.     Plaintiff, as a shareholder and representatives of Stamps.com, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these

Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## THIRD CAUSE OF ACTION

### (Against Defendants for Abuse of Control)

77.  Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

78.  Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence the Company, for which they are legally responsible.

79.  As a direct and proximate result of Defendants' abuse of control, the Company has sustained significant damages.  As a direct and proximate result of Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, the Company has sustained and continues to sustain significant damages.

80.  As a result of the misconduct alleged herein, Defendants are liable to the Company.  Plaintiff, on behalf of the Company, has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### (Against Defendants for Waste of Corporate Assets)

81.  Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

82.     As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused the Company to waste valuable corporate assets by failing to disclose (i) the Company had a material weakness in its internal control over financial reporting; (ii) the Company's disclosure controls and procedures were not effective; and (iii) as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

83.     As a result of the waste of corporate assets, Defendants are each liable to the Company.

84.     Plaintiff, on behalf of the Company, has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### (Derivative Claim For Violations Of Section 10(b) Of The Exchange Act And SEC Rule 10b-5 Promulgated Thereunder <u>(Against Defendant McBride))</u>

85.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth in this paragraph.

86.     This Count is asserted on behalf of the Company against the Officer Defendant for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

87.     During the Relevant Period, in connection with Stamps.com's repurchases of Stamps.com shares, the Officer Defendant made, disseminated, or approved false or misleading statements about the Company specified herein,

which he knew or deliberately disregarded were false or misleading and were intended to deceive, manipulate, or defraud. Those false or misleading statements and the Officer Defendant's course of conduct were designed to artificially inflate the price of the Company's common stock.

88.    At the same time that the price of the Company's common stock was inflated due to the false and misleading statements made by the Officer Defendant, the Officer Defendant caused the Company to repurchase millions of shares of its own stock at prices that were artificially inflated due to the Officer Defendant's false or misleading statements. The Officer Defendant engaged in a scheme to defraud the Company by causing the Company to purchase Company shares at inflated prices.

89.    The Officer Defendant violated Section 10(b) of the Exchange Act and Rule 10b-5 in that he (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Company in connection with the Company's purchases of Stamps.com common stock during the Relevant Period.

90.    The Officer Defendant, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the U.S. mails, engaged and

participated in a continuous course of conduct that operated as a fraud and deceit upon the Company; made or disseminated various false and/or misleading statements of material facts and omitted to state material facts necessary in order to make the statements made or disseminated, in light of the circumstances under which they were made or disseminated, not misleading; made or disseminated the above statements intentionally or with a deliberately reckless disregard for the truth; and employed devices and artifices to defraud in connection with the Company's purchase of Stamps.com common stock, which were intended to, and did deceive the Company that (i) its financial results depended on the manipulation of a USPS program that cost USPS an estimated $235 million per year; and (ii) as a result, the Company's business was unsustainable and its financial results were highly misleading.

91.    The Officer Defendant was among the senior management and a director of the Company, and was therefore directly responsible for, and are liable for, all materially false or misleading statements made during the Relevant Period, as alleged above.

92.    As described above, the Officer Defendant acted with scienter throughout the Relevant Period, in that he acted either with intent to deceive, manipulate, or defraud, or with severe recklessness. The misstatements and omissions of material facts set forth herein were either known to the Officer Defendant or were so that the Officer Defendant should have been aware of them.

93.    As a result of the Officer Defendant's misconduct, Stamps.com has suffered damages in that it paid artificially inflated prices for Stamps.com common stock as part of the repurchase program and suffered losses when the true facts became known.  The Company would not have purchased Stamps.com common stock at the prices it paid, or at all, but for the artificial inflation in the Company's stock price caused by the Officer Defendant's false or misleading statements.

94.    As a direct and proximate result of the Officer Defendant's wrongful conduct, the Company suffered damages in connection with its repurchases of Stamps.com common stock during the Relevant Period.  By reason of such conduct, the Officer Defendant is liable to the Company pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5.

95.    Plaintiff brought this claim within two years of its discovery of the facts constituting the violation and within five years of the violation.

## SIXTH CAUSE OF ACTION
### (Derivative Claim For Violations of Section 20(a) of the Exchange Act (Against Defendant McBride))

96.    Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth in this paragraph.

97.    This Count is asserted on behalf of the Company against Defendant Lam for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

98.     During his tenure as an officer and/or Chairman of the Board, Defendant McBride was a controlling person within the meaning of Section 20(a) of the Exchange Act.  By reason of his absolute control, Defendant McBride had the power and authority to direct the management and activities of the other executive employees, to hire and fire other executive employees at whim, and to cause other executive employees to engage in the wrongful conduct complained of herein.  Defendant McBride was able to and did control, directly or indirectly, the content of the public statements made by all other executive employees during the Relevant Period, including the materially misleading financial statements, thereby causing the dissemination of the false and misleading statements and omissions of material facts as alleged herein.

99.     In his capacity as senior executive, and Chairman of the Board of Stamps.com, Defendant McBride had direct involvement in and oversight over the day-to-day operations of the executive employees and the Company's employees, who would not act unless Defendant McBride agreed with their course of conduct.

100.    Defendant McBride, individually, was a controlling person of the other executive employees within the meaning of Section 20(a) of the Exchange Act.

101.    As set forth above, Defendant McBride violated Section 10(b) of the Exchange Act by his acts and omissions as alleged herein.  To the extent Defendant McBride is not the maker or disseminator of a specific false or misleading

statement made by the Company, Defendant McBride is liable pursuant to Section 20(a) of the Exchange Act.

102.   As a direct and proximate result of Defendant McBride's conduct, the Company suffered damages in connection with its purchase of Stamps.com common stock pursuant to the stock repurchase program.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray for relief and judgment as follows:

A.   Against Defendants in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, unjust enrichment, abuse of control, and waste of corporate assets;

B.   Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorney's fees, accountants' and experts' fees, costs, and expenses; and

C.   Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: May 16, 2019

**TOSTRUD LAW GROUP, P.C.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Jon A. Tostrud*
    Jon A. Tostrud
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
Email: jtostrud@tostrudlaw.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel:   (212) 983-1300
Fax:   (212) 983-0383
Email: tjmckenna@gme-law.com

*Attorneys for Plaintiff*

1

## **VERIFICATION**

2      I, Joey Hill, declare that I have reviewed the Verified Shareholder Derivative
3    Complaint ("Complaint") prepared on behalf of Stamps.com, Inc. and authorize its
4    filing.   I have reviewed the allegations made in the Complaint, and to those
5    allegations of which I have personal knowledge, I believe those allegations to be
6    true.  As to those allegations of which I do not have personal knowledge, I rely on
7    my counsel and their investigation and for that reason believe them to be true.  I
8    further declare that I am a current holder, and have been a holder, of Stamps.com,
9    Inc. common stock at all relevant times.

10

11
                                                    _____
12                                                  JOEY HILL

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1